LILES, Acting Chief Judge.
This appeal was brought by the United States government from a final summary decree in an interpleader suit. The decree held, among other things, that appellee Peninsula State Bank (hereafter referred to as the Bank) had a superior claim to certain funds represented by accounts receivable than did the government by virtue of a tax lien. The facts are not in dispute.
On July 5, 1963, December 2, 1963, and other dates prior thereto, the Bank filed with the Secretary of State of Florida notices of assignments of accounts receivable. These notices were filed pursuant to the provisions of Chapter 524, Fla.Stats., F.S.A., the Accounts Receivable Act. The notices were in the general form authorized by § 524.02, Fla.Stats., F.S.A., and stated that appellee William H. Van Cleave, d/b/a International Business Interiors, had assigned or intended to assign one or more accounts receivable to the Bank.
The government made assessments for withholding and FICA taxes against Van Cleave on October 30, 1963, in the sum of $3,059.01. Notice of this federal tax lien covering the October 30 assessment was filed with the Clerk of the Circuit Court in Hillsborough County, Florida, where Van Cleave lived and was doing business, on November 29, 1963.
On December 17, 1963 Van Cleave entered into a written contract with the Strol-los to perform certain interior decorating services. Van Cleave received additional advances of $1,570.96 from the Bank, executed his promissory note for that amount, and assigned the Strollo contract as security. This occurred on December 23, 1963. There seems to be no question that the Bank took the assignment of the Strollo contract within the effective period of the general notice filed under Chapter 524, Fla.Stats., F.S.A. There is, however, no indication that a notice of the assignment of accounts receivable was filed with the Secretary of State contemporaneously with the execution of Van Cleave’s note and his assignment of the Strollo contract, or that a notice of the assignment of the Strollo contract was ever filed.
Van Cleave completed the work on the Strollo contract for which he is admittedly due $1,004.70. Being faced with the competing claims of the Bank and the government, the Strollos filed an interpleader suit and deposited the sum due on the contract into the registry of the Circuit Court for *469 Polk County. On its own motion, the government was dismissed from the suit hut was granted leave to intervene for the purpose of asserting its tax lien. The case was ultimately heard on motion for summary judgment filed by the government.
In his final summary decree the chancellor held that the Bank was a “protected assignee” under the provisions of Chapter 524, Fla.Stats., F.S.A., and particularly § 524.04(1) (b), Fla.Stats., F.S.A., at the time 'it received the assignment of the Strollo contract (December 23, 1963) because the general notice filed with the Secretary of State on July 5, 1963, was still in full force and effect. Thus, said the chancellor, this general notice predated the tax assessments and notice of federal tax lien, and the Bank’s claim was therefore superior to the claim of the government. The chancellor held as an alternative ground that the situs of the debt involved was Polk County, Florida (where the work on the Strollo contract was done); that no notice of the federal tax lien was ever filed in Polk County; and that, therefore, the tax lien ■was invalid as against the Bank. The chancellor also awarded attorney’s fees to the Strollos’ attorneys and ordered that these fees be paid out of the interpleader fund.
The government tax lien arose under § 6321 of the Internal Revenue Code of 1954, which provides that if any person liable to pay any tax neglects to pay it after demand, the amount of the tax becomes a lien in favor of the United States upon all property belonging to that person. Section 6322 of the Code provides that the lien imposed arises at the time of assessment and continues until the amount due is satisfied.
Section 6323 of the Code relates to the validity and priority of federal tax liens against certain purchasers. This section was amended by the Federal Tax Lien Act of 1966, 80 Stat. 1125, which was signed into law during the pendency of this appeal. The government concedes that the new law applies to the case at bar.
In general, § 6323 governs the validity and priority of federal tax liens against certain persons including purchasers, holders of security interests, mechanic’s lienors, and judgment lien creditors. The section provides that the lien imposed by § 6321 shall not be valid as against any of the above-named until notice of the lien is filed in one office within the state, as designated by the laws of such state, in which the property subject to the lien is situated. In Florida, the proper place of filing is with the Clerk of the Circuit Court. Section 28.20, Fla.Stats., F. S.A. There is no question that the Bank comes within the provisions of § 6323, and thus the earliest dáte upon which the government’s tax lien could become valid against the Bank was November 29, 1963, the date notice of the lien was filed.
The determination of the relative priority of a federal tax lien and a state statutory lien is always a federal question to be determined under federal law. United States v. Equitable Life Assurance Society, 384 U.S. 323, 86 S.Ct. 1561, 16 L.Ed.2d 593, (1966); United States v. Weissman, 135 So.2d 235 (D.C.A.Fla.1961). In order for a competing claim to “prime” a federal tax lien, the claim must satisfy the federal standards of choateness and perfection, i. e., the competing lien must be perfected in the sense that there is nothing more to be done to have a choate lien. When the identity of the lienor, the property subject to the lien and the amount of the lien are established, priority is determined on the principle that “first in time is the first in right.” United States v. Equitable Life Assurance Society, supra; United States v. Weissman, supra. The question to be determined is whether the Bank’s claim to the amount due on the Strollo contract was perfected under federal standards prior to the filing of the notice of the federal tax lien.
The chancellor determined that the Bank was a “protected assignee” under the provisions of § 524.04(1) (b), Fla.Stats., *470 F.S.A., by virtue of the general notice of intention to assign accounts receivable filed July 5, 1963. Section 524.04, Fla.Stats., F.S.A., provides in part that:
“(1) A written assignment for value, signed by the assignor, becomes protected at the time the assignee:

“(b) Takes an assignment during the effective period of the notice.”
It has been held, however, that at least for federal purposes an assignment becomes protected under the above-quoted section “ * * * the moment the assignee takes a written assignment of an account receivable then in existence as a valid and then subsisting contract which obligates the account debtor then or in the future to pay money.” (Emphasis added.) Ribaudo v. Citizens Nat’l Bank of Orlando, 261 F.2d 929, 938 (C.A. 5th 1958).
Notice of the federal tax lien was filed November 29, 1963. The Strollo contract was not entered into until December 17, 1963. It was not in existence as a “valid and then subsisting contract” until that date, and thus the Bank’s assignment of that contract could not be “protected” prior to that date. The property subject to the Bank’s lien (the amount due on the Strollo contract) and the amount of the lien were not established until after notice of the tax lien had been filed. The federal standards of choateness not having been met on November 29,1963, the government’s tax lien was “first in time” and therefore superior to the Bank’s claim.
The Federal Tax Lien Act of 1966 also amends § 6323 of the Internal Revenue Code to provide that certain specifically defined interests shall have priority over federal tax liens even though these interests arise after notice of the federal tax lien has been filed. The Act deals specifically with the type of com-merical security financing agreement involved in this case and provides that in such cases the financing party may make loans against new accounts receivable for 45 days after the notice of the federal tax lien is filed. In order to receive the benefit of this protection, however, § 6323(c) (1) (B) provides that the security interest must be “ * * * protected under local law against a judgment lien arising, as of the time of tax lien filing, out of an unsecured obligation.” (Emphasis added.) The new Act affords the Bank no relief because its claim would not have been protected by state law against a judgment lien arising on November 29, 1963, the time of tax lien filing. The Bank’s claim was not protected by § 524.04, Fla.Stats., until it took the assignment of the Strollo contract on December 23, 1963, and § 524.04, Fla. Stats., F.S.A., provides that: “(2) A protected assignee takes subject to: (a) Judicial liens on the account at the time his assignment became protected. * * * ”
As an alternative ground for his decision, the chancellor held that tax lien was invalid because notice was filed in Hillsborough County, Van Cleave’s residence, rather than in Polk County, the “situs of the debt.” The new Act provides in § 6323(f) (2) (B) that “In the case of personal property, whether tangible or intangible, [the place for filing notice of lien is] at the residence of the taxpayer at the time the notice of lien is filed.” Moreover, it appears to be the prevailing view that for purposes of filing notice of tax lien, personal property, such as accounts receivable, is “situated” in the domicile of the taxpayer. See, e. g., United States v. Goldberg, 362 F.2d 575 (C.A. 3rd 1966) ; Walker v. Paramount Engineering Co., 353 F.2d 445 (C.A. 6th 1965). Thus it would appear that with respect to the Bank’s claim of lien the notice of tax lien was properly filed.
The Bank’s contention that Van Cleave never acquired a property interest in the Strollo contract to which the federal tax lien could attach is without merit.
*471 In sum, then, we hold that the chancellor erred in determining that the Bank’s claim was superior to the tax lien of the United States.
In view of our decision it was also error to order the attorneys’ fees to the Strollos’ attorneys to be paid out of the interpleader fund. The entire fund was impressed with a federal tax lien which was superior to any later arising claim for attorneys’ fees. Compare, United States v. First Federal Savings and Loan Association of St. Petersburg, 155 So.2d 192 (D.C. A.Fla.1963).
In view of the foregoing the final summary decree appealed is reversed and remanded for proceedings not inconsistent herewith.
HOBSON and PIERCE, JJ., concur.