Breitel, J.
The issue, on summary judgment, is whether a mortgagee who bid in the full amount of the secured debt at the foreclosure sale in order to obtain the mortgaged property, retains any insurable interest entitling it to sue on a fire insurance policy under a mortgagee loss payable clause. The answer by well-settled precedents in this State and • elsewhere in the Nation is a unanimous negative, based on the legal and practical considerations which dictate that the owner-mortgagor, or *334 subsequent lienors, if anyone, and not the mortgagee under a discharged mortgage are entitled to recover for the fire loss.
What seems to have caused confusion is the equally well-settled rule that the rights under a fire insurance policy are fixed both as to amount and standing to recover at the time of the fire loss. From this rule it has been further and improperly deduced that the mortgagee could do nothing to impair his rights thus fixed at the time of loss. And of course he could: by waiver, estoppel, assignment, or as here by discharge of the debt. Another conjectured circumstance, not presented anywhere in the record, is that perhaps the mortgagee in bidding in the whole debt to obtain the mortgaged property was not regarding the debt as having its face value and that, therefore, it should have another chance to show that the property it received was really not worth the amount of the bid. Needless to suggest, these approaches are novel, represent a deviation from not only the applicable rules of law, but their practical purposes as well.
Plaintiff Whitestone is the mortgagee and defendant Allstate is the insurer of dwelling premises owned by the Sandstroms. The Sandstroms are named defendants in this action but are not parties to the appeal and the record does not inform whether they have a viable cause of action on the fire insurance policy against the insurer. The premises were valued at $18,000, insured by the owners for $14,000, and mortgaged for $11,500. On April 17, 1967, a fire destroyed approximately 50% of the value of the premises. Concededly, at the time of the fire loss, under the mortgagee loss payable clause the mortgagee was entitled to recover for the loss on the fire insurance policy.
However, on April 16, 1968, in foreclosure sale under the mortgage, the mortgagee bid $13,116.61, the full amount of the balance then due on the mortgage for principal and interest. As a consequence, the mortgagee received the deed and title to the property. Under familiar rules this bid and taking of title constituted a satisfaction of the debt barring a deficiency judgment against the mortgagor and generally the termination of the mortgagee’s insurable interest as a mortgagee (e.g., 2 Wiltsie, Mortgage Foreclosure [5th ed.], § 830).
Mingled into the ease is the fact that before the mortgagee bid for the premises and after the fire the insurer had offered *335 to settle the fire loss for $7,471. But this offer is of no moment in determining whether the mortgagee retained its insurable interest, or determined it by the taking of the property in satisfaction of the secured debt.
The applicable rules of law are simple. Because a mortgagee is entitled to one satisfaction of his debt and no more, the bidding in of the debt to purchase the mortgaged property, thus cutting off other lower bidders, has always constituted a satisfaction of the debt (cf. Lansing v. Goelet, 9 Cow. 346, 348-349, 352, 356; see 59 C. J. S., Mortgages, § 599, subd. b). For this purpose it is not necessary or useful to refer to attenuated traditional concepts to the effect that when the mortgagee acquires the title to the property there is a merger of the mortgage interest into that of the fee (e.g., Ann., Mortgagee Acquiring Fee — Effect on Debt, 95 A. L. R 89, esp. pp. 102-103). The point is that the mortgagee has voluntarily converted the debt into the property and has done so by taking the property in satisfaction of the debt. It could have bid less, thus leaving a deficiency for which the mortgagor would be obligated and from which there would survive an insurable interest. It could have bid more, in which event there would have been a surplus in favor of the mortgagor or subsequent lienors but no insurable interest surviving in the mortgagee as mortgagee.
Perhaps the best example of how a mortgagee could lose his right to recover under the mortgagee loss payable clause would be assignment of the mortgage, and indeed for whatever consideration, after the fire loss. Obviously, the fixing of rights at the time of the loss does not extend to such a post-loss event. The satisfaction of the mortgage debt by the bidding in of the debt at the foreclosure sale is functionally equivalent. In either event the mortgagee has terminated his insurable interest.
As noted earlier, the authorities are unanimous to the effect that if subsequent to the fire the mortgagee has had its debt satisfied by purchase at foreclosure either by the mortgagee or a stranger, even by its bidding in of the outstanding debt, the mortgagee’s rights under the policy are terminated (see, e.g., Heilbrunn v. Germam Alliance Ins. Co., 150 App. Div. 670, 672, app. dsmd. 206 N. Y. 683; Glen Cove Trust Co. v. Trypuc, 110 N Y. S. 2d 368, 371, affd. 281 App. Div. 1034; Power Bldg. & Loan Assn. v. Ajax Fire Ins. Co., 110 N. J. L. 256; Lutheran *336 Brotherhood v. Hooten, 237 So. 2d 23 [Fla.]; Northwestern Nat. Ins. Co. v. Mildenberger, 359 S. W. 2d 380 [Mo.]; Insurance Co. of North Amer. v. State Sav. & Loan Assn., 425 F. 2d 1180, 1182; Rosenbaum v. Funcannon, 308 F. 2d 680, 683-685; 5A Appleman, Insurance Law and Practice [rev. ed., 1970], § 3403, pp. 301-302; 5 Couch, Insurance 2d, §§ 29.75-29.77; 38 N. Y. Jur., Mortgages and Deeds of Trust, § 143, pp. 277-278).
The rule was especially well expressed in Rosenbaum v. Funcannon (supra), quoting the opinion below, as follows:
“ ‘ The rights of a loss-payable mortgagee are determined as of the time of the loss. Therefore, an extinguishment of a mortgage or deed of trust by foreclosure after the loss does not affect the liability of the insurance company to a loss-payable mortgagee. * * *
‘ It must he borne in mind, however, that extinguishment of a mortgage or deed of trust by sale of the property at foreclosure does not necessarily extinguish the debt itself. Only to the extent that the mortgagee receives payment upon the debt through the foreclosure is the debt itself extinguished. If the security property does not bring enough to pay the debt, the debt itself remains to the extent that it is unpaid, notwithstanding extinguishment of the mortgage as such by sale to third parties or acquisition by the mortgagee as bidder at foreclosure sale.
‘ It is in this sense that the rule is quite properly stated to the effect that extinguishment of the mortgage does not affect the liability of an insurance company to a loss-payable mortgagee.
‘ On the other hand, it is well settled that full or partial extinguishment of the debt itself, whether prior to the loss (Reynolds v. London [& L. Fire Ins. Co.], 128 Cal. 16, 60 P. 467 (1900)) or subsequent to the loss (Power Bldg. & Loan Assn. v. Ajax Fire Ins. Co. [110 N.J.L. 256], 164 Atl. 410 (N.J. 1933)), precludes to the extent thereof, any recovery by the loss-payable mortgagee for the plain and sole reason that the debt, itself, has been to that extent extinguished. ’ ” (308 F. 2d, at p. 684).
Although the precise issue has not been previously considered by this court the supporting principles have been and are well settled. The theory of recovery by a mortgagee is indemnity. *337 The risk insured against is an impairment of the mortgaged property which adversely affects the mortgagee’s ability to resort to the property as a source for repayment. Where the debt has been satisfied in full subsequent to the fire, neither reason nor precedent suggest recovery on the policy by the mortgagee. The fact that a mortgagee may not recover on the insurance does not necessarily mean that an insurer will not be obligated to pay the mortgagor or other person entitled under the policy. Indeed, in the absence of defenses, it will be the mortgagor or his creditors who will recover.
The rule is not harsh and it is eminently practical. None disputes that the mortgagee is entitled to recover only his debt. Any surplus value belongs to others, namely, the mortgagor or subsequent lienors. Indeed, it is not conceivable that the mortgagee could recover a deficiency judgment against the mortgagor if it had bid in the full amount of the debt at foreclosure sale. To allow the mortgagee, after effectively cutting off or discouraging lower bidders, to take the property—and then establish that it was worth less than the bid — encourages fraud, creates uncertainty as to the mortgagor’s rights, and most unfairly deprives the sale of whatever leaven comes from other bidders. Mortgagees have the obvious opportunity to bid only so much of the debt as equals the value of the property, and if someone else wishes to bid the same or more, so much the better for every other party concerned with the property. Yet it is conjectured that the mortgagee may have improvidently bid up to the amount of the debt. Moreover, this is the dissenting conclusion although there is not the slightest suggestion, let alone evidence, supplied to establish that the property was overbid. In fact, mortgagee’s whole contention has been the legalistic and syllogistic one that if the time of loss fixes rights then the rights of the mortgagee to recover was fixed on April 17, 1967, the day of the fire, and nothing done thereafter could impair that right. The fallacy of that reasoning, of course, has already been demonstrated; it overlooks the power of the obligee to alter the obligation running in his favor.
Much is made of the case of Savarese v. Ohio Farmers Ins. Co. (260 N. Y. 45). The rule in that case stands simply for the proposition that a mortgagee under a mortgagee loss pay *338 able clause does not lose the right to recover or his insurable interest because the security has been restored in value or even increased beyond what it was worth just before the fire. And of course this is quite true; a secured creditor is never diminished in his rights to look to the security because it has been increased in value by way of repairs or otherwise. Hence, he is entitled to recover on the insurance although the proceeds are not necessary to restore the premises since repaired but to reduce the amount of the debt. The situation in the Savarese case and its rule has nothing to do with this case where the debt has been legally discharged by the results of the foreclosure sale.
Accordingly, the order of the Appellate Division should be affirmed, with costs.